UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
MARIA ROSSANA AALA QUINIO, A/K/A,
"SUSAN" QUINIO,

        Plaintiff,      **MEMORANDUM & ORDER**
                  19-CV-4686 (PKC) (SJB)

    - against -

RUSTICO AALA,

        Defendant.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

    On August 14, 2019, Plaintiff Maria Rossana Aala Quinio, also known as Susan Quinio

("Plaintiff"), filed this action against her older brother, Defendant Rustico Aala ("Defendant"), for

one count of battery.  (*See* Complaint ("Compl."), Dkt. 1, ¶¶ 19–21.)  Plaintiff alleges that, in 1986,

when Plaintiff was 16 years old and Defendant was 42 years old, Defendant raped her.  (*Id.* ¶¶ 8–

9.)  Plaintiff brings her action pursuant to the New York Child Victims Act, N.Y. C.P.L.R. § 214-

g, which extended the statute of limitations for civil claims arising from certain enumerated sex

crimes.  (*Id.* ¶¶ 16-17.)  Diversity jurisdiction allows this state court claim to be brought here.  28

U.S.C. § 1332.  (Compl., Dkt. 1, ¶ 2.)

    There are currently three motions before the Court.  First, Plaintiff seeks sanctions against

Defendant for an unspecified amount in excess of $50,000 (Dkt. 26), based on Defendant's denial

of the rape allegation.  Second, Plaintiff has filed objections to a December 14, 2020 Memorandum

& Order of the Honorable Sankeet J. Bulsara, U.S.M.J., denying Plaintiff's motion for leave to file

an amended complaint.  (Dkt. 43.)  Third, Plaintiff has filed objections to several discovery rulings

issued by Magistrate Judge Bulsara in an April 9, 2021 Order.  (Dkt. 59.)  For the reasons explained

below, (1) Plaintiff's motion for sanctions is denied; (2) the December 14, 2020 Order is overruled,

the parties are instructed to submit supplemental briefing, and Plaintiff is granted leave to amend; and (3) the April 9, 2021 Order is affirmed in its entirety.

## BACKGROUND

Plaintiff is a 51-year-old resident of Arizona.  (*See* Compl., Dkt. 1, ¶ 5.)  Defendant is Plaintiff's older brother and is a 77-year-old resident of New York.  (*Id.* ¶ 6.)  Plaintiff alleges that, in August 1986, when Plaintiff was 16 and Defendant was 42, Defendant raped and impregnated her.  (*Id.* ¶¶ 8–10.)  As a result, Plaintiff carried and gave birth to a child who was given up for adoption.  (*Id.* ¶¶ 10–11.)  In 2009, Plaintiff confronted Defendant about the "family secret" and the two signed an agreement requiring Defendant to pay Plaintiff for the damages caused by the rape.  (*Id.* ¶¶ 12–13; Contract, *Quinio v. Aala* ("*Quinio I*"), No. 15-CV-4912 (E.D.N.Y. Feb. 13, 2019), ECF 156.)

In 2015, Plaintiff filed a prior action against Defendant for allegedly breaching the terms of the 2009 agreement.  (Compl., Dkt. 1, ¶ 14.)  This Court also handled that case, which proceeded to a trial.  *See Quinio I*, No. 15-CV-4912 (E.D.N.Y. Feb. 13, 2019).  Throughout that litigation, Plaintiff was represented by Richard Pu, the same attorney who represents Plaintiff in this matter; and, during all times relevant to the pending motions, Defendant was represented by the law firm of Lebedin Kofman, the same firm that represents Defendant in this case.  *See generally id.  Quinio I* concluded with a jury finding that the 2009 agreement was void as a matter of public policy because it included a promise to refrain from informing law enforcement about the alleged rape in exchange for a promise of money, property, or assets.  (Jury Verdict Sheet, *Quinio I*, No. 15-CV-49, ECF 159.)

After the New York Legislature passed the New York Child Victims Act, extending the statute of limitations for civil claims arising from certain enumerated sex crimes, Plaintiff filed this action for battery based on the same rape allegations underlying the prior contract action.  The

procedural history of the present action will be outlined, where relevant, in the discussion on Plaintiff's motions below.

## DISCUSSION

### I.     Motion for Sanctions

Plaintiff's motion for sanctions is based on statements made by Defendant during *Quinio I*. Plaintiff alleges that, three separate times during the course of litigating *Quinio I*, Defendant admitted to raping Plaintiff—twice during a deposition and once at trial. The Complaint in this case includes the relevant portions of those transcripts as exhibits. (*See* Compl., Dkt. 1, Exs., 1, 2, 3; Plaintiff's Moving Brief ("Pl's Sanctions Br."), Dkt. 26-6, at 1–5.) In Defendant's Answer to the Complaint, however, Defendant denied having raped Plaintiff. (*See* Answer, Dkt. 19, ¶ 8 (responding to Compl., Dkt. 1, ¶ 8).) Plaintiff contends that defense counsel's filing of an Answer denying allegations that Defendant had previously admitted will "multiply the proceedings" in this case by (1) requiring Plaintiff to prove that Defendant raped her, (2) making it harder to settle the case, and (3) preventing Plaintiff from moving for judgment on the pleadings. (Pl's Sanctions Br., Dkt. 26-6, at 4–5.) Pursuant to 28 U.S.C. § 1927, Plaintiff seeks an award of attorneys' fees in excess of $50,000 for the time that will be spent on the additional litigation flowing from Defendant's denial of the alleged rape. (*Id.*)

28 U.S.C. § 1927 provides that

[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Furthermore, an award under § 1927 must be supported by a finding of bad faith on the part of the attorney to be sanctioned. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

Defense counsel, Lebedin Kofman, argues that there was no bad faith in filing Defendant's Answer denying the rape allegation because "there are colorable arguments to be made with respect to Mr. Aala's competency (or lack thereof) at the time of his deposition and the trial of the prior contract action, which is when the admissions relied upon by plaintiff in this action were provided." (Defendant's Memorandum of Law In Opposition To Plaintiff's Motion for Sanctions ("Def's Sanctions Mem."), Dkt. 28, at 5.)

Plaintiff counters that Lebedin Kofman "effectively admitted that Defendant was not incompetent by withdrawing the contention on the eve[] of trial in the Contract Action," referring to a letter filed by defense counsel on February 7, 2019. (Plaintiff's Reply Brief ("Pl's Sanctions Reply"), Dkt. 29-2, at 2 (referring to *Quinio I*, No. 15-CV-4912, ECF 147)). Plaintiff's theory of defense counsel's bad faith thus proceeds as follows: Defendant admitted to the rape at a deposition and at trial in the previous case; defense counsel withdrew an incompetency defense before trial, therefore "effectively admitting" that Defendant was competent when he made the admissions; and thus defense counsel's filing of an Answer denying that Defendant raped Plaintiff based on an argument that Defendant was incompetent when he made the admissions is evidence of bad faith. Plaintiff's theory is untenable for at least three reasons.

First, the incompetency defense in the contract action necessarily referred to Defendant's competency at the time he signed the contract in 2009, not at the time he was deposed or testified in that action in 2016 and 2019, when Defendant allegedly made the admissions on which Plaintiff relies for her motion. *See Ortelere v. Teachers' Ret. Bd. of City of New York*, 250 N.E.2d 460, 465 (N.Y. 1969) (discussing standards for competency to contract); (Contract, *Quinio I*, No. 15-CV-4912, ECF 156 (stating 2009 date); Pl's Sanctions Br., Dkt. 26-6, at 2–3 (stating dates of admissions on which Plaintiff relies)). Accordingly, any "effective[] admi[ssion]" that Defendant

was competent contained in Lebedin Kofman's February 7, 2019 letter (withdrawing the incompetency defense) would have referred to Defendant's competency in 2009, and not necessarily to Defendant's competency in 2016 and 2019.

Second, three days after filing the February 7, 2019 letter, defense counsel reversed course, filing a February 10, 2019 letter stating that defense counsel had once again met with Defendant, that it was clear that Defendant had diminished capacity at that time, and that Defendant wished to assert an incompetency defense at trial, covering both the time when the contract was executed and continuing through the litigation of the contract action. (*Quinio I*, No. 15-CV-4912, ECF 153.) Thus, even if the incompetency defense had referred to the alleged admissions made in 2016 and 2019—the bases for Plaintiff's sanctions motion—defense counsel did not ultimately withdraw that defense and "effectively admit" that Defendant was competent during either period. Furthermore, even if Plaintiff wanted to point to the 2009 agreement as an admission of rape and thus evidence of bad faith for filing the Answer denying the allegation, the February 10, 2019 letter indicates that defense counsel ultimately believed that Defendant may have been incompetent at the time of that admission. While Defendant did testify at trial, notwithstanding his counsel's assertions in the February 10 letter that he was incompetent, as discussed below, Defendant's decision to testify, in itself, does not provide a basis for finding bad faith by the Lebedin Kofman attorneys. Accordingly, there is nothing Plaintiff can point to that would undercut defense counsel's position that it had a good faith basis to believe that Defendant was incompetent at the time of any alleged admission of rape, and thus had a good faith basis to file the Answer denying the allegation of rape in this action.

Finally, even if defense counsel had ultimately withdrawn the incompetency defense (which it did not), and even if that defense had referred to Defendant's competency at the time of

both the 2016 and 2019 statements (which it did not), withdrawing an affirmative defense of incompetency is simply not akin to "effectively admit[ing] that Defendant was not incompetent." Whether or not to put on an affirmative defense is a trial strategy. *See Gordon v. Lavalley*, No. 13-CV-4401 (ALC) (AJP), 2014 WL 888468, at *15 (S.D.N.Y. Mar. 6, 2014) (collecting cases), *report and recommendation adopted*, 2016 WL 5793400 (S.D.N.Y. Oct. 3, 2016).  There could be any number of reasons to decide not to assert an affirmative defense at trial, such as focusing resources and the jury's attention on one defense with the greatest likelihood of success.  Indeed, here, defense counsel's initial withdrawal of the incompetency defense could have been based on an assessment of their ability to prove that defense given the Court's earlier decision precluding the testimony of the mental health expert proffered by Defendant's prior counsel.  (*See Quinio I*, 15-CV-4912, 07/12/2017 Docket Order; *id*., 08/07/2017 Docket Order.)  Furthermore, the Court cannot infer from Defendant's decision to testify at trial that his counsel agreed with that decision or believed that Defendant was competent then.  The only evidence in the record regarding defense counsel's position on this issue was their February 10, 2019 Letter stating their belief that Defendant was incompetent at that time.

To summarize, defense counsel has put forth a good faith basis for denying Plaintiff's allegation of rape in the Answer, and Plaintiff's argument that defense counsel repudiated that position is both factually and legally incorrect.  Accordingly, Plaintiff has not demonstrated the bad faith required for sanctions under 28 U.S.C. § 1927, and Plaintiff's motion for attorneys' fees is DENIED.

## II. Motion to Amend

### A. Background

On September 23, 2020, Plaintiff sought leave to amend her complaint to add Defendant's wife, Lerma Aala ("Lerma") as a Defendant, and add a claim for fraudulent conveyance.  (Motion

6

to Amend ("Mot. to Amend"), Dkts. 36, 36-1, 36-2, 36-3, 36-4.)  The bases for the fraudulent conveyance claim are allegations that, in April 2014, after Defendant had signed the agreement to pay Plaintiff damages based on the rape, but before the 2015 contract action was filed and before the contract was found to be void in 2019, Defendant transferred to his wife an interest in a condominium in the Philippines, placing it outside of Plaintiff's reach.  (*See* First Amended Complaint ("FAC"), Dkt. 36-3, ¶¶ 18–24.)  Plaintiff cites as evidence a deed for the property in both Defendant's and Lerma's names and an "Acceptance Form," accepting ownership of the property, in only Lerma's name, both dated April 1, 2014.  (*Id.* ¶¶ 20–21.)

In her proposed amended complaint, which Judge Bulsara did not permit Plaintiff to file, Plaintiff does not specify under what law—be it New York or Filipino, statutory or common law— the fraudulent conveyance claim is being brought.  The proposed amended complaint simply contains a subheading reading "The Fraudulent Conveyance From Rustico to Lerma" and then allegations apparently aimed at supporting a fraudulent conveyance claim.  (*Id.* at 9–13.)  In support of her motion to amend, however, Plaintiff argued that the proposed amended complaint states a claim under the post-2020 version of Sections 273 and 274 of the New York Debtor and Creditor Law ("NYDCL").  (Plaintiff's Moving Brief ("Amend Br."), Dkt. 36-4, at 3–8.)

In opposition, Defendant argued that the property "was purchased exclusively by the defendant's wife using funds from her retirement" and Defendant's name was on the deed only because that was required by Filipino law.  (Memorandum of Law in Opposition to Plaintiff Quinio's Motion to Amend Her Complaint ("Amend Opp."), Dkt. 37, at ECF 2–3.[1])

Before deciding the motion, Judge Bulsara sought supplemental briefing on

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

(1) the impact of the jury verdict in 15-CV-4912, finding that the contract between Plaintiff and Defendant is void as against public policy, on any fraudulent conveyance claim; (2) how, if at all, the 2020 amendments to the N.Y. Debtor & Creditor law affect Plaintiff's proposed claim; and (3) whether the N.Y. Debtor & Creditor law can be used to invalidate a transfer of real property located abroad.

(11/23/2020 Docket Order.)

In her supplemental brief, Plaintiff argued that "the jury's verdict had no impact" on her fraudulent conveyance claim; that her proposed claim was "made pursuant to the law as it existed after the 2020 amendments," and thus the amendments had no effect on her claim; and that New York law applies to the claim because "the applicable law is that of the place where the injury is inflicted." (Plaintiff's Initial Supplemental Brief ("Supp. Amend Br."), Dkt. 40-6, at 1–5.) Defendant conceded that "[i]t is well settled that a Court in New York has jurisdiction over an individual's tangible and/or intangible property even if the situs of said property is located outside of New York so long as the New York Court can properly exercise personal jurisdiction over the debtor/garnishee." (Supplemental Memorandum of Law in Opposition to Plaintiff Quinio's Motion to Amend Her Complaint ("Supp. Opp. Mem."), Dkt. 39, at 3.) Defendant also did not dispute that the post-2020 NYDCL applied to Plaintiff's claim, but argued that Plaintiff could not state a claim under Sections 273 and 274 for various reasons. (*Id.* at 4–6.)

Judge Bulsara denied the motion for leave to amend the complaint, finding that the proposed amendments failed to state a claim and thus amending the complaint would be futile. (Memorandum & Order ("Amend M&O"), Dkt. 41.) Plaintiff timely filed objections to Judge Bulsara's Order, which the Court reviews here. (*See* Plaintiff's Brief in Support of Her Objection to Magistrate Bulsara's 12/14/2020 Decision ("Amend Objections"), Dkt. 43-5.)

## B.   Standard of Review

Motions to amend are non-dispositive, *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007), and a district judge may overrule a magistrate judge's determination of non-dispositive

matters only where they are "clearly erroneous or contrary to law," *JKAYC, LLC v. Noah B*ank, No. 20-CV-943 (PKC) (SMG), 2021 WL 4893677, at *3 (E.D.N.Y. Oct. 20, 2021).    A determination is "clearly erroneous" where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," *id.* (quoting *Castillo v. G&M Realty L.P.*, 950 F.3d 155, 167 (2d Cir. 2020), *as amended* (Feb. 21, 2020), and "contrary to law" when "it fails to apply or misapplies relevant statutes, case law or rules of procedure," *id.* (quoting *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011)).

Under Federal Rule of Civil Procedure 15(a), "leave to amend 'shall be freely given when justice so requires.'"  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *see* Fed. R. Civ. P. 15(a).[2]  "Leave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *TechnoMarine*, 758 F.3d at 505 (internal quotation marks omitted); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).  In this case, futility is the only ground cited for denying the motion for leave to amend.  (Amend M&O, Dkt. 41, at 5.)

"An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 304 (2d Cir. 2020) (per curium).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[2] As noted, Plaintiff proposes adding a party (Lerma) as well as a new claim.  Amendments to add new parties are governed by Federal Rule of Civil Procedure 21, rather than Rule 15.  Rule 21 permits joinder of third parties "at any time, on just terms."  Fed. R. Civ. P. 21; *see also City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 308 (2d Cir. 2006).  In practice, however, the standard for deciding whether to permit joinder under Rule 21 is "the same standard of liberality afforded to motions to amend pleadings under Rule 15."  *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016); *accord Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012) ("[T]he showing necessary under Rule 21 is the same as that required under Rule 15(a).").

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In determining whether proposed claims are futile, however, a court should not consider only the proposed amendments submitted to the court for its consideration, but also other possible amendments that could be made.  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order); *cf. Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 235 (2d Cir. 2007) (reversing denial of leave to amend and directing the district court to consider "whether the proposed amendment *or different amendments* to the complaint should be allowed" (emphasis added)).  Furthermore, "[t]he Second Circuit has made clear that district courts 'should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Ramnarine v. Johnson*, No. 19-CV-5544 (PKC) (LB), 2019 WL 5309994, at *3 (E.D.N.Y. Oct. 21, 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  Accordingly, if a court finds that a plaintiff's proposed claims could withstand a motion to dismiss if the plaintiff could, in good faith, allege additional facts, the court should grant the plaintiff leave to amend.  *Izmirligil v. Select Portfolio Servicing, Inc.*, No. 17-CV-6157 (PKC) (LB), 2020 WL 1941192, at *8 (E.D.N.Y. Apr. 22, 2020).

### C. Analysis

Broadly speaking, Judge Bulsara gave three reasons for finding that Plaintiff's proposed amendments were futile.  First, that Plaintiff's claim is based on her rights under the 2009 contract, which was found to be void in the contract action.  Second, that Plaintiff brought her claim under New York law, but Filipino law applies.  And third, that Plaintiff brought her claim under the post-2020 NYDCL, but, if the NYDCL applies, it is the pre-2020 NYDCL that applies, and Plaintiff fails to allege several elements required to state a claim under the pre-2020 NYDCL.  The Court addresses each in turn.

1.     Plaintiff's Rights Under The 2009 Agreement

Judge Bulsara's first ground for finding Plaintiff's proposed fraudulent conveyance claim to be futile was that the 2009 agreement was found to be void.  That justification relies on the conclusion that the pre-2020 version of the NYDCL applies to Plaintiff's claim.  (*See* Amend M&O, Dkt. 41, at 6.)  As discussed in detail below, it is not clear whether Filipino or New York law should apply.  It is clear, however—as Judge Bulsara correctly concluded—that if the NYDCL applies, only the pre-2020 version of the NYDCL could apply.  (*Id.* at 11); *Ray v. Ray*, 799 F. App'x 29, 31 n.1 (2d Cir. 2020) (summary order) ("The new provisions . . . will not apply to a transfer made or obligation incurred before the act's effective date" of "April 4, 2020." (internal quotation marks omitted)).[3]  However, even under the pre-2020 NYDCL, this Court does not find that the fact that the 2009 agreement was found to be void renders Plaintiff's proposed claim futile.

Section 273 of the pre-2020 NYDCL stated that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."  NYDCL § 273 (1925).

Section 274 stated that

Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

NYDCL § 274 (1925).

---

[3] Plaintiff does not directly object to this portion of the M&O, but continues to analyze the *post*-2020 NYDCL when arguing that the FAC states a claim.  (Amend Objections, Dkt. 43-5, at 2–3.)

Judge Bulsara explained that "Plaintiff's fraudulent conveyance claim is based on her rights under the 2009 Contract . . . .   That is, Plaintiff alleges Defendant transferred his ownership interest in the Philippines condominium to his wife, Lerma Aala, to avoid payment under the 2009 Contract," which was found to be void as against public policy.  (Amend M&O, Dkt. 41, at 6–7.) From that premise, Judge Bulsara's opinion proceeds as follows: (1) a contract "that has been deemed void is one that never existed," (2) "one cannot breach a contract that never legally existed," and thus (3) "Defendant could not have breached the 2009 contract."  (*Id.* at 7.) Accordingly, Judge Bulsara concluded that Plaintiff could not be a creditor based on the 2009 agreement, Defendant's "property transfer to his wife could not have been made to avoid any obligation under the 2009 contract," and thus, "Plaintiff has no legal basis to bring a fraudulent conveyance action based on the 2009 Contract, and the motion to amend is, therefore, futile." (*Id.* at 7.)

The Court, however, does not read Plaintiff's proposed fraudulent conveyance claim to be based on her rights under the 2009 agreement.  Rather, the proposed amended complaint indicates that Plaintiff believes herself to be a creditor based on the alleged assault itself, and cites to the existence of the contract only as evidence of Defendant's intent to move it out of the reach of Plaintiff, whom Defendant perceived to be a creditor at that time, albeit due to the filing of the contract action.  (*See* FAC, Dkt. 36-3, ¶ 22 (stating that fraudulent conveyance claim is based on virtual certainty that Plaintiff will obtain a judgment in the current action); *id.* ¶ 21 (alleging that the transfer was motivated by Plaintiff's threat to sue under contract); Amend Objections, Dkt. 43-5, at 4 (same)).  Such an allegation of intent would be necessary to state a claim under section 243 of the post-2020 version of the NYDCL, which Plaintiff believed applied.  *See* NYDCL § 273(a)(1) (2020) (stating that fraudulent conveyance must be made "with actual intent to hinder,

delay or defraud any creditor or debtor"); (Amend Br., Dkt. 36-4, at 3–8).  Although the Court

finds that allegation of intent plausible, it is ultimately immaterial because, as stated, only the pre-

2020 NYDCL could apply to Plaintiff's claim, and neither Section 273 or 274 of the pre-2020

NYDCL, quoted in full above, required intent.  *See* NYDCL §§ 273, 274 (1925).

What is material is whether Plaintiff could be a creditor based on the assault rather than the

contract.  Under the NYDCL, a tort victim becomes a creditor the moment that the cause of action

accrues, *Shelly v. Doe*, 671 N.Y.S.2d 803, 805 (App. Div. 1998), and an assault and battery cause

of action accrues immediately upon the occurrence of the tortious act, *Lettis v. U.S. Postal Serv.*,

39 F. Supp. 2d 181, 204 (E.D.N.Y. 1998).  Accordingly, if Plaintiff's assault claim is found to be

valid, Plaintiff was a creditor at the time of the alleged transfer, at least under the NYDCL.  Based

on the record as a whole, and the NYDCL, the Court thus finds that the fact that the 2009 agreement

was found to be void does not render Plaintiff's fraudulent conveyance claim to be futile.  The

Court therefore proceeds to Judge Bulsara's second ground for finding the claim to be futile.

2.    Choice of Law

As noted, Judge Bulsara correctly concluded that, if the NYDCL applies to Plaintiff's

proposed fraudulent conveyance claim, only the pre-2020 NYDCL can apply.  Judge Bulsara also

noted, however, that there was "a significant choice-of-law issue that neither side addresse[d]."

(Amend M&O, Dkt. 41, at 7.)  The significant choice-of-law issue identified by Judge Bulsara was

that, in the 1967 case of *James v. Powell*, the New York Court of Appeals held that, for claims of

fraudulent conveyance of real property, the substantive law of the jurisdiction where the property

is located must be used to determine if a fraudulent conveyance occurred.  (*Id.* at 7–11.)  *See James

v. Powell*, 225 N.E.2d 741, 745–46 (N.Y. 1967) ("The rule is that the validity of a conveyance of

a property interest is governed by the law of the place where the property is located. . . .  It would

be unrealistic to give the plaintiff a cause of action for fraud against his debtor and others on the

basis of their having made a conveyance of property in Puerto Rico if what they did was perfectly valid under the law of that jurisdiction.").

Judge Bulsara observed that *James* was "subject to a partial legislative override" by the 2020 amendment to the NYDCL, which stated that "certain claims 'under this article [are] governed by the local law of the jurisdiction in which the debtor is located when the transfer is made or the obligation is incurred.'" (Amend M&O, Dkt. 41, at 10 (alteration in original) (quoting NYDCL § 279(b) (2020).) But since the transfer took place before the 2020 amendment, Judge Bulsara concluded that "the law of the Philippines, not New York, applies. And as such, Plaintiff's New York fraudulent conveyance claim is necessarily futile." (Amend M&O, Dkt. 41, at 11.)

The Court first discusses the conflicting choice-of-law principles at play and then addresses whether the proposed fraudulent conveyance claim should be deemed futile if Filipino law applies.

### a.   Conflicting Choice-of-Law Principles

What law applies to Plaintiff's proposed fraudulent conveyance claim is, indeed, a complicated question in this case. To start, the Court notes that because it has jurisdiction over this matter pursuant to the federal diversity statute, 28 U.S.C. § 1332 (Compl., Dkt. 1, ¶ 2), the Court must apply the choice-of-law principles of the forum state, *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)), and that Judge Bulsara's reading of *James* is correct—under New York choice of law principles, as explicated by the State's highest court, the law of the jurisdiction where the property is located applies to claims of fraudulent conveyance of real property, *see Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 395 (2d Cir. 2001) (citing *James* and noting that the law of the *situs* applies to questions about the validity of a transfer).

14

Plaintiff argues that *James* does not apply to her proposed claim because *James* was about a common law cause of action for fraudulent conveyance, not the NYDCL.  (Amend Objections, Dkt. 43-5, at 5.)  Plaintiff is correct that *James* was about a common law cause of action and not the NYDCL.  *See James v. Powell*, 266 N.Y.S.2d 245, 246, (App. Div. 1966), *rev'd on other grounds*, 225 N.E.2d 741 (N.Y. 1967); *see also Ritter v. Klisivitch*, No. 06-CV-5511 (DRH) (WDW), 2008 WL 2967627, at *14 (E.D.N.Y. July 30, 2008) (citing *James* and noting that New York has distinct statutory and common law causes of action for fraudulent conveyance); *cf. Siegel v. Kontogiannis*, No. 15-CV-2856 (MKB) (JO), 2017 WL 9482101, at *8 (E.D.N.Y. Mar. 14, 2017) ("[N]otwithstanding some contrary decisions from decades ago, the most recent and authoritative case law makes clear that New York does indeed recognize [a common law cause of action for fraudulent conveyance]."), *report and recommendation adopted*, 2017 WL 1169545 (E.D.N.Y. Mar. 29, 2017).  The Court further notes that the NYDCL's fraudulent conveyance provision was enacted to "enable creditors to know with certainty that they could rely upon property of their debtors, even if situated in another jurisdiction."  *See, e.g.*, *Eclaire Advisor as Tr. to Daewoo Int'l (Am.) Corp. Creditor Tr. v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 268 (S.D.N.Y. 2005); *accord S. Indus., Inc. v. Jeremias*, 411 N.Y.S.2d 945, 949 (App. Div. 1978).  Accordingly, under New York's standard "interest analysis" choice-of-law principle, courts have found, post-*James*, that New York has an especially strong interest in applying its own law when one of its residents is defrauded, and thus have applied the NYDCL to claims of fraudulent conveyance of *certain types of property* located abroad.  *See, e.g.*, *id.* at 267–68 & n.4; *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94-CV-5620 (JFK), 1999 WL 64283, at *6 (S.D.N.Y. Feb. 8, 1999).

The Court is aware of no post-*James* case, however—and Plaintiff has pointed to none—where a court has applied the NYDCL to *real property* located abroad.[4]  To the contrary, since *James*, courts in New York have applied the law of the *situs* to claims of fraudulent conveyance of real property located in other jurisdictions, even when those claims were brought pursuant to the NYDCL rather than common law.  *See, e.g.*, *Bombardier Cap., Inc. v. Richfield Hous. Ctr., Inc.*, No. 91-CV-502 (HGM), 1994 WL 118294, at *4 (N.D.N.Y. Mar. 21, 1994) ("The court must also apply New York law to address plaintiff's fraudulent conveyance claims, because under New York law the location of the property dictates what substantive law will govern suits concerning its conveyance."); *In re Fill*, 82 B.R. 200, 226 n.44 (Bankr. S.D.N.Y. 1987) ("Although the Trustee pleaded only New York law, it is the situs of realty which under New York's conflict of law rules determines the law to be applied; and under New York law, a condominium is realty.").  Thus, if the Court were to conduct a conflict-of-law analysis, it would not find that it was contrary to law for Judge Bulsara to conclude that Filipino law should apply to Plaintiff's proposed fraudulent conveyance claim.[5]  *Mfg. Admin. & Mgmt. Sys., Inc. v. ICT Grp., Inc.*, 212 F.R.D. 110, 119 (E.D.N.Y. 2002) ("A Magistrate Judge's order simply cannot be contrary to law when the law itself is unsettled.").

However, another New York choice-of-law principle suggests that, where the parties' briefing assumes that New York's substantive law applies, that is sufficient to establish choice of

---

[4] The Court notes that, in *Irving Tr. Co. v. Maryland Cas. Co.*, 83 F.2d 168, 172 (2d Cir. 1936), the Second Circuit explained that a court may apply New York law to determine if a conveyance was fraudulent, but the state of the *situs* would be free to reject the judgment.  That case, however, pre-dated *James* and was not based on the NYDCL.  *See also RCA Corp. v. Tucker*, 696 F. Supp. 845, 854 (E.D.N.Y. 1988) (explaining *Irving* in a post-*James* case, but applying its principles to conveyance of stock, not real property).

[5] The parties, however, are free to further brief the issue when they submit the additional briefing outlined below.

law, and the Court need not conduct its own choice-of-law analysis. *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000); *Perrone v. Amato*, No. 09-CV-316 (AKT), 2017 WL 2881136, at *23 (E.D.N.Y. July 5, 2017); *see also Federal Ins. Co. v. American Home Assur. Co.*, 639 F.3d 557, 567–68 (2d Cir. 2011) (finding New York law applied in diversity action brought in New York because law of forum controlled where neither party raised choice of law issue on appeal); *Walter E. Heller & Co. v. Video Innovations*, Inc., 730 F.2d 50, 52 (2d Cir. 1984) ("[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied."); *Martin v. City of Cohoes*, 332 N.E.2d 867, 869 (N.Y. 1975); (collecting cases, including New York Court of Appeals cases dating back to 1885, for the proposition that "parties to a civil litigation, in the absence of a strong countervailing public policy, may consent, formally or by their conduct, to the law to be applied."). This is true even where foreign law could apply if a choice-of-law analysis were conducted. *Tehran-Berkeley Civil & Environmental Engineers v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989) ("Iranian law could apply, since the contract was executed and performed in that country. The parties' briefs, however, rely on New York law. Under the principle that implied consent to use a forum's law is sufficient to establish choice of law, we will apply New York law to this case." (internal citation omitted)). Notably, at least one court in this Circuit has applied that principle to a claim of fraudulent conveyance of real property located in another jurisdiction. *Excelsior Cap. LLC v. Allen*, No. 11-CV-7373 (CM), 2012 WL 4471262, at *9 (S.D.N.Y. Sept. 26, 2012), *aff'd*, 536 F. App'x 58 (2d Cir. 2013). In that case, however, the parties agreed that the law of the *situs* should apply, consistent with *James*, rather than contrary to it. The case therefore did not apply the pre-2020 NYDCL to real property located in another jurisdiction, as Plaintiff urges the Court to do here.

Finally, the Court notes that the parties in *James* appeared to agree that New York law applied, but the Court of Appeals still found that it could not. *James*, 225 N.E.2d at 745 ("[T]he law of New York does not and cannot determine the extent to which property located outside the State is subject to execution by a judgment creditor."). Because the principle that implied consent can establish choice of law was established long before *James*, it could be inferred that *James* reflects "a strong countervailing public policy" against applying the implied consent rule in cases about fraudulent conveyances of real property in other jurisdictions. *See Martin*, 332 N.E.2d at 869. *James*, however, did not squarely address the issue.

In this case, both parties' briefing assumed that the NYDCL applied, even after Judge Bulsara directly asked them to address the issue.[6] (*See* Supp. Amend Br., Dkt. 40-6; Supp. Opp. Mem., Dkt. 39.) *Excelsior* and the other cases about implied consent cited above thus suggest that New York law can apply to Plaintiff's proposed fraudulent conveyance claim. *James*, however, suggests otherwise. As noted, it is thus unclear if New York or Filipino law should apply to Plaintiff's proposed fraudulent conveyance claim.

At this time, the Court does not resolve the issue of whether New York or Filipino law applies. Either way, however, the Court finds, as discussed below, that it was an error of law to deny Plaintiff the opportunity to seek to amend the complaint to allege facts that might establish a fraudulent conveyance claim under Filipino law. Furthermore, because of the uncertainty surrounding the choice-of-law question in this case and the possibility that both sides erroneously

---

[6] This is not true of *James*—that is, the parties in *James* were not squarely asked if New York law should apply before the Court disregarded the parties' implied consent to New York law. The language of *James*, however, makes it clear that the *James* court would not have found such a distinction material. *James*, 225 N.E.2d at 745. ("[T]he law of New York does not and cannot determine the extent to which property located outside the State is subject to execution by a judgment creditor.").

agreed on what law should apply, the Court believes that the parties should be allowed to brief the choice-of-law issue based on the relevant case law and other considerations raised by Judge Bulsara and this Court.  The Court next addresses Judge Bulsara's finding that amendment of the complaint would be futile because Filipino law applies.

<b>b.</b>    <u>If Filipino Law Applies</u>

After finding that Filipino law should apply, Judge Bulsara concluded that "Plaintiff's New York fraudulent conveyance claim is necessarily futile" because "it seeks relief under inapplicable law." (Amend M&O, Dkt. 41, at 11.)  Judge Bulsara thus read Plaintiff's proposed amendment to be limited to attempting to state a claim for fraudulent conveyance under New York law[7] and did not explore whether Plaintiff could state a claim for fraudulent conveyance under Filipino law. But nothing prevents Plaintiff from attempting to state a claim for fraudulent conveyance under Filipino law—though her proposed amended complaint should have identified the statutory or common law basis for this claim—and nothing prohibits this Court from deciding such a claim. Indeed, in *James*, after concluding that Puerto Rican rather than New York law should apply, the Court did not dismiss the claim, but instead directed the trial court to "reopen the inquest and ascertain the pertinent Puerto Rican law and to reconsider, in the light of that law, the questions as to the sufficiency of the complaint." *James*, 225 N.E.2d at 746.

Although Plaintiff clearly framed her proposed amended complaint to state a claim under New York law, Plaintiff was unaware that Filipino law might apply to her claim at the time she

---

[7] In fact, despite framing her claim under New York law, Plaintiff's proposed amended complaint failed to identify which law—New York, Filipino, statutory, or common law—her fraudulent conveyance claim was being brought under.  While a section titled "Plaintiff's Injuries," lists "attorneys fees in prosecuting her claims under Debtor Creditor law," (FAC, Dkt. 36-3, ¶ 26(b)), neither the factual allegations nor the count for fraudulent conveyance (styled "Second Claim (Fraudulent Conveyance)") state a legal basis for the claim (*id.* ¶¶ 18–24, 30–32).

filed her proposed amended complaint, and thus did not attempt to allege facts that may state a claim for fraudulent conveyance under Filipino law.  Indeed, neither party has ever addressed whether there is a fraudulent conveyance claim under Filipino law, or what the elements of such a claim might be.  Plaintiff might be able to, in good faith, allege additional facts that would state a claim for fraudulent conveyance under Filipino law.  If so, Plaintiff should be allowed to do so.  *See Panther Partners Inc*, 347 F. App'x at 622; *Kassner*, 496 F.3d at 235; *Izmirligil*, 2020 WL 1941192, at *8.

  For that reason, the Court finds that it was an error of law to deny Plaintiff's motion for leave to amend based on the conclusion that Filipino law applies to Plaintiff's proposed fraudulent conveyance claim and thus that Plaintiff's proposed claim is futile.

  The Court turns to Judge Bulsara's third ground for finding the claim to be futile.

### 3. Failure to State a Claim Under the Pre-2020 NYDCL

  Judge Bulsara's third ground for finding that Plaintiff's proposed fraudulent conveyance claim is futile returns to assessing the claim under the NYDCL.  (Amend M&O, Dkt. 41, at 11–13.)  Judge Bulsara found that Plaintiff's belief that the post-2020 NYDCL applied to this case was fatal because it resulted in Plaintiff "fail[ing] to plead material elements (such as the debtor's insolvency) necessary to state a claim."  (*Id.* at 13.)  As a preliminary matter, Plaintiff's proposed amended complaint did, in fact, allege Defendant's insolvency.  (FAC, Dkt. 36-3, ¶ 18(a).)  More broadly, however, even if Plaintiff's proposed amended complaint fails to allege certain elements of a pre-2020 NYDCL fraudulent conveyance claim, that should not doom her motion for leave to amend at this juncture.  Prior to Judge Bulsara's opinion, both parties assumed that the post-NYDCL should apply.  (*See* Supp. Opp. Mem., Dkt. 39, at 5–6.)  Now knowing that the pre-2020 NYDCL applies, Plaintiff may be able to allege other facts in good faith that would state a viable

claim.  Accordingly, Plaintiff should be afforded that opportunity.  *See Panther Partners Inc*, 347 F. App'x at 622; *Kassner*, 496 F.3d at 235; *Izmirligil*, 2020 WL 1941192, at *8.

4.     Conclusion

Because the Court vacates Judge Bulsara's Memorandum & Order[8] and because it is unclear whether New York or Filipino law should apply to Plaintiff's proposed claim, the Court believes that, in the interests of justice, the parties should be given the opportunity to brief whether New York or Filipino law applies to Plaintiff's proposed fraudulent conveyance claim.  The parties should identify whether there is a fraudulent conveyance claim under Filipino law and, if so, whether it is materially different from New York's fraudulent conveyance law prior to the 2020 amendments to the NYDCL.  Furthermore, based on the outcome of that briefing, if Plaintiff can, in good faith, allege additional facts to state a claim for fraudulent conveyance under the applicable law, the Court finds that, in the interests of justice, Plaintiff should be afforded that opportunity.

## III.   Discovery Motions

On April 9, 2021, Judge Bulsara issued an order resolving several discovery disputes between the parties, some in Plaintiff's favor and some in Defendant's.  (Order ("Disc. Order"), Dkt. 58.)  Plaintiff objects to four aspects of that Order: (1) granting a protective order preventing Plaintiff from deposing Defendant's son, Russell Aala ("Russell"); (2) denying Plaintiff's request for production of communications between Lerma and defense counsel, based on attorney-client

---

[8] Although Judge Bulsara's Memorandum & Order stated that "the law of the Philippines, not New York, applies," it also stated that "another reason" why the proposed amended complaint was futile was because it failed to state a claim under New York law.  (Amend M&O, Dkt. 41, at 11–13.)  It is thus unclear if Judge Bulsara squarely held that Filipino law applies.  In any event, because the Court concludes that, regardless of whether Filipino law applies, it was legally erroneous to deny leave to amend, the Memorandum & Order is vacated in its entirety.  Given that posture, the Court deems it appropriate to allow the parties to further brief the issue of whether Filipino law applies.

privilege; (3) denying Plaintiff's request for production of communications between Defendant and his wife Lerma, based on spousal privilege; and (4) denying Plaintiff's request for attorneys' fees in connection with her partially successful motion to compel.  (Plaintiff's Brief in Support of Her Objection to Magistrate Bulsara's 4/9/2021 Decision ("Disc. Objections"), Dkt. 59-6.)

Discovery orders are non-dispositive.  *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).  Accordingly, the Court will overrule Judge Bulsara's Order only to the extent it is "clearly erroneous or contrary to law."  *Pressley*, 2016 WL 1271480, at *1.  The Court reviews each issue raised by Plaintiff, but ultimately finds nothing in Judge Bulsara's well-reasoned Order to be clearly erroneous or contrary to law.

## A.    The Protective Order

Plaintiff makes several complaints about Judge Bulsara granting a protective order preventing Plaintiff from deposing Russell Aala.  None are availing.

First, Plaintiff notes that Judge Bulsara's individual practice rules require parties to provide a certification that the parties met and conferred before bringing a discovery dispute to the court consistent with Federal Rule of Civil Procedure 37.  (Disc. Objections, Dkt. 59-6, at ECF 5.) Plaintiff alleges that "Defendant's 3/26/2021 letter to the Magistrate seeking a protective order contained no mention of a meeting or a certification thereof."  (*Id.* (record citation omitted).) However, Defendant's March 26, 2021 letter included the following:

> The undersigned hereby certifies that our office ha[s] conferred with Plaintiff's counsel to discuss the issues discussed in this motion, and to discuss Plaintiff's rationale for pursuing these depositions.  However, the parties have not been able to reach an amicable resolution.  Specifically, in an attempt to work out an acceptable compromise, we asked Plaintiff's counsel to disclose the topics he intended to explore at Russell Aala's deposition.  See Exhibit I at p. 2.  However, Plaintiff's counsel responded that he was not going to disclose what topics he was going to explore with Russell Aala.  Id.

(First Motion for Protective Order (Mot. for Protective Order), Dkt. 54, at 4–5.)  Plaintiff takes issue with the fact that, despite the parties "conferring" about the proposed motion, they did not "meet."  (*See* Objections, Dkt. 59, at ECF 5–6.)

Plaintiff raised the issue of Defendant's refusal to meet before filing the motion with Judge Bulsara (Dkt. 55 at 1–2), but Judge Bulsara did not address it directly.  Nevertheless, "a court may waive the meet-and-confer requirement if it is clear that any conference would be fruitless."  *UMB Bank, N.A. v. Sanofi*, No. 15-CV-8725 (GBD) (JCF), 2017 WL 3738457, at *2 (S.D.N.Y. Aug. 10, 2017) (collecting cases).  Accordingly, given Plaintiff's certification about the fruitlessness of the communications between the parties on this issue, the Court cannot say that it was an error of law for Judge Bulsara not to enforce the meet-and-confer requirement in this instance.  Plaintiff's first ground for objecting to Judge Bulsara's grant of a protective order preventing Plaintiff from deposing Russell Aala is therefore meritless.

Second, Plaintiff notes that Judge Bulsara's individual practice rules require parties to "attach as exhibits the discovery requests that a party is seeking to compel."  (Disc. Objections, Dkt. 59-6, at ECF 6.)  Plaintiff concedes that Judge Bulsara's rule extends only to motions to compel, but argues that it should be extended to protective orders, and urges this Court to "modify Magistrate Bulsara's rule."  (*Id.*)  As authority for doing so, Plaintiff quotes Federal Rule of Civil Procedure 72, which states that, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72.[9]  That rule is about orders.  It says nothing about a judge's individual practice rules.  Plaintiff cites no law—and the Court is not aware of any—even suggesting that Judge Bulsara's requirement that parties attach discovery requests to motions to compel, but not motions for

---

[9] Plaintiff incorrectly cites Rule 62 for this quote.

protective orders, is "contrary to law."  Accordingly, Plaintiff's second ground for objecting to Judge Bulsara's grant of a protective order preventing the deposition of Russell Aala is also meritless.

Third, Plaintiff notes that, in granting the protective order, Judge Bulsara observed that "Plaintiff wishes to ask Russell Aala whether his father admitted to raping Plaintiff.  But Plaintiff provides no suggestion beyond speculation that Defendant spoke to his son about Plaintiff."  (Disc. Objections, Dkt. 59-6, at ECF 7 (record citations omitted).)  Plaintiff argues that "[i]t makes no sense to require that Plaintiff already have [information that Russell has knowledge of the rape] before being permitted to elicit [that information] at a deposition."  (*Id.*)  The Court disagrees.

A protective order may be granted "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  In the prior contract action, Russell Aala both responded to interrogatories and was deposed by Plaintiff's counsel.  (*See* August 25, 2017 Deposition of Russell Aala ("Tr."), Dkt. 54, Ex. F, at 11–13.)  Judge Bulsara noted that "Plaintiff does not cite any portion of the prior deposition testimony to suggest that Russell Aala has knowledge of the assault in question or spoke to his father about it at any time."  (Disc. Order, Dkt. 58, at 6.)  With no evident good faith basis for the deposition, counsel for Defendant and Russell plausibly asserted that "Plaintiff's sole purpose in [seeking to depose Russell] is to . . . harass Defendant's family."  (Mot. for Protective Order, Dkt. 54, Ex. F, at 3.)  Accordingly, it was not clearly erroneous for Judge Bulsara to conclude that Plaintiff had no good faith basis—and thus had only an impermissible motive—for seeking to depose Russell Aala; nor was it an error of law to issue an order protecting Russell from such a deposition.[10]

---

[10] The Court notes that the deposition of Russell Aala in the prior action was taken over four years ago and limited to questions about Defendant's competency.  (01/03/2017 Minute Entry, *Quinio I*, 15-CV-4912, ECF 54.)  In addition, Plaintiff was specifically warned not to attempt to

**B.      Communications Between Lerma and Defense Counsel**

Plaintiff moved to compel production of communications between Lerma Aala and defense counsel.  (*See* Disc. Order, Dkt. 58, at 4.)   Judge Bulsara denied that motion because "[c]ommunications between Defendant or his wife and Defendant's lawyers are protected by the attorney-client privilege."  (*Id.*)  Plaintiff objects to that reasoning, arguing that "Lerma doesn't have an attorney-client relationship with Defendant's lawyers."  (Disc. Objections, Dkt. 59-6, at ECF 7.)  Defendant's lawyers, however, have represented that they do, in fact, have an attorney-client relationship with Lerma.  (Dkt. 49-12 ¶ 1(a)(ii) (responding to Dkt. 49-11 ¶ 1(a)(ii)).)  That is consistent with the fact that Lerma was a Defendant in the prior contract action through much of the litigation, and defense counsel here—Lebedin Kofman—represented her there, as well.  (*See, e.g.*, Request for Declaratory Relief for Defendant Lerma Aala, *Quinio I*, 15-CV-4912, ECF 153.)  Plaintiff has offered no evidence to the contrary.  Accordingly, it was not clearly erroneous or contrary to law for Judge Bulsara to conclude that any communications between Lerma and defense counsel were protected by attorney-client privilege.

---

depose Russell about inappropriate or irrelevant matters, "such as the underlying rape allegations." *Id.*  Nevertheless, Plaintiff's counsel did ask Russell whether his father had told him anything about "the background" of the lawsuit or settlement agreement at issue in the lawsuit. (Tr., Dkt. 54, Ex. F, at 12).  That question certainly had the potential—and seemingly was designed—to elicit information about the facts underlying the contract action, *i.e.*, the alleged rape.  Accordingly, Judge Bulsara's conclusions about the deposition was not "clearly erroneous."

Furthermore, although Plaintiff notes in her objections that "the issues" and thus scope of discovery were different in the prior action (Response in Opposition to Defendant's First Motion for a Protective Order, Dkt. 55, at 3), Plaintiff did not raise before Judge Bulsara any argument specifically about the timing or limitations on the prior deposition (and does not even do so now) and thus the Court cannot properly consider them here.  *See New York City Dist. Council of Carpenters v. Allied Design & Constr., LLC*, 335 F. Supp. 3d 349, 351 (E.D.N.Y. 2018) ("In this district and circuit, it is well established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." (alteration omitted)).

### C.      Communications Between Defendant and Lerma

Plaintiff moved to compel the production of communications between Defendant and Lerma.   (*See* Disc. Order, Dkt. 58, at 4.)   Judge Bulsara denied that motion because "[c]ommunications between the Defendant and his wife are protected by the spousal privilege" under New York law, which applies in this case because the sole claim is a New York cause of action. (*See id.*); Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").   Judge Bulsara acknowledged Plaintiff's argument that Defendant had waived the privilege by failing to reply to the document request within 30 days.   (*See* Disc. Order, Dkt. 58, at 4–5; *see also* Dkt. 49 at 3.)   "Given the importance of the privilege[] at issue," however, Judge Bulsara declined to "infer a waiver simply from the delay in response." (Disc. Order, Dkt. 58, at 4.)

Plaintiff takes issue with Judge Bulsara's reliance on out-of-jurisdiction cases for the proposition that the spousal privilege should not be lightly waived based on an untimely response. (Disc. Objections, Dkt. 59-6, at ECF 8.)  Yet, she fails to cite a case finding spousal privilege to be waived based on an untimely response under New York law.  (*Id.* (citing *UBS Intern. Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, 2010 WL 743371, at *2 (S.D.N.Y. Feb. 24, 2010); *Senat v. City of New York*, 255 F.R.D. 339, 339 (E.D.N.Y. 2009); *Carr v. Queens-Long Island Med. Grp., P.C.*, 2003 WL 169793, at *5 (S.D.N.Y Jan. 24, 2003).)  None of the cases cited by Plaintiff even mention spousal privilege.  *Carr* does not mention privilege of any sort, *UBS International Inc.* was based on a local court rule and not New York's rules of evidence, and *Senat* was based on the federal rules and, even there, noted a split of authority of whether waiver based on untimely responses "may extend to objections based on privilege."  *Senat*, 255 F.R.D. at 339.

Under New York law, a "court is generally precluded from inquiring into the propriety of discovery requests" when the parties fail "to timely seek a protective order."  *See Roman Cath.*

*Church of the Good Shepherd v. Tempco Sys.*, 608 N.Y.S.2d 647, 648 (App. Div. 1994).  But there is an exception to that waiver-by-untimely-objection rule for objections based on privilege.  *See Anonymous v. High Sch. for Env't Stud.*, 820 N.Y.S.2d 573, 578 (App. Div. 2006) (noting that the general rule limits a court's review of discovery objections to "the question of privilege").  Furthermore, in a markedly clear and well-reasoned decision, a New York Supreme Court Justice specifically noted, in the context of discussing whether spousal privilege could apply where all non-privilege objections were waived as untimely, that there is a "privilege-related exception" to the "waiver-by-untimely-objection rule."  *Theroux v. Resnicow*, 135 N.Y.S.3d 630 (table), 2020 WL 7414608, at *2 (Sup. Ct. 2020).

Accordingly, it was not clearly erroneous or an error of law for Judge Bulsara to decline to "infer a waiver [of spousal privilege] from the delay in response by Defendant."  (Disc. Order, Dkt. 58, at 4.)

### D.     Attorneys' Fees

Finally, Plaintiff argues that Judge Bulsara erred in failing to award Plaintiff attorneys' fees based on her partially successful discovery motions.  (Disc. Objections, Dkt. 59-6, at 9–10.)  Plaintiff relies on Federal Rule of Civil Procedure 37(a)(5)(A), which states that, if a discovery motion is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  Plaintiff argues that Judge Bulsara's decision not to award Plaintiff attorneys' fees was "clearly erroneous" because "Plaintiff won virtually every branch of her motion to compel."  (Disc. Objections, Dkt. 59-6, at ECF 10.)

Plaintiff, however, does not comment on the fact that Federal Rule of Civil Procedure 37(a)(5)(A) states that the Court "must not order [an award of attorneys' fees] if . . . the opposing

party's nondisclosure, response, or objection was substantially justified."   Fed. R. Civ. P. 37(a)(5)(A)(ii).   Judge Bulsara clearly relied on that provision for declining to award attorneys' fees, as is evident from Judge Bulsara's quote from *Tabbert v. Howmedica Osteonics Corp.*, which declined to award attorneys' fees because "the 'parties had good faith disputes concerning the scope of discovery.'"   (Disc. Order, Dkt. 58, at 6 (quoting *Tabbert*, No. 15-CV-39, 2017 WL 10350610, at *2 (E.D. Wash. May 3, 2017).)   Plaintiff raises no objection to Judge Bulsara's conclusion that Defendant's objections to the successful aspects of Plaintiff's motion to compel were "substantially justified," even if Defendant ultimately did not prevail.   Furthermore, this Court has independently reviewed Defendant's objections to those aspects of Plaintiff's motion to compel and agrees that they were all substantially justified.   Accordingly, Judge Bulsara's decision not to award Plaintiff attorneys' fees in connection with her motion to compel was not clearly erroneous or an error of law.

## CONCLUSION

For the reasons explained in this Memorandum & Order, the Court issues the following rulings.   First, Plaintiff's motion for sanctions (Dkt. 26) is denied.   Second, Judge Bulsara's December 14, 2020 Order (Dkt. 41) is reversed, the parties shall submit briefing on the issues raised in Part II of this Memorandum & Order, and then Plaintiff is granted leave to amend should she have a good faith basis to do so.[11]   And third, Judge Bulsara's April 9, 2021 (Dkt. 58) Order is affirmed in its entirety.

---

[11] This additional briefing and any renewed motion to amend the complaint should be addressed to the undersigned.   The parties are directed to submit a joint proposed briefing schedule by January 18, 2022.

SO ORDERED.

_/s/ Pamela K. Chen_
Pamela K. Chen
United States District Judge

Dated: January 3, 2022
      Brooklyn, New York