UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MARIA ROSSANA AALA QUINIO, a/k/a,
"SUSAN" QUINIO,

                      Plaintiff,                      **MEMORANDUM & ORDER**
                                                                           19-CV-4686 (PKC) (SJB)
      - against -

RUSTICO AALA,

                      Defendant.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      On January 3, 2022, this Court asked the parties to brief whether New York or Philippines law should apply to Plaintiff's proposed claim of fraudulent conveyance of real property located in the Philippines. Both parties have submitted briefing arguing that New York law should apply. None of the parties' arguments, however, convince the Court that it is permitted to apply New York law to the fraudulent conveyance in this case. For the reasons explained below, the Court thus finds that the law of the Philippines must apply to Plaintiff's proposed claim of fraudulent conveyance, and grants Plaintiff leave to file an amended complaint stating a claim for fraudulent conveyance under Philippines law.

      Because the Court has jurisdiction over this matter pursuant to the federal diversity statute, 28 U.S.C. § 1332 (Complaint ("Compl."), Dkt. 1, ¶ 2), the Court must apply the choice-of-law principles of the forum state, *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). A brief review of New York's choice-of-law principles forecloses most of the parties' arguments in support of applying New York law.

      In 1963, in the case of *Babcock v. Jackson*, 191 N.E.2d 279 (N.Y. 1963), the New York Court of Appeals adopted an "interest analysis" as "the bedrock principle that underlies New

1

York's entire choice-of-law regime." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 336–37 (2d Cir. 2005). "New York's interest analysis requires that the law of the jurisdiction having the greatest interest in the litigation will be applied. . . ." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (internal quotation marks omitted). The interest analysis governs in most types of cases, unless a "specific other approach is called for." *Fin. One Pub. Co.*, 414 F.3d at 337. Specifically, the interest analysis applies to torts. G*lobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006). Indeed, *Babcock* itself established New York's interest analysis rule in a tort case. 191 N.E.2d at 281–83; *see Miller v. Miller*, 237 N.E.2d 877, 878 (N.Y. 1968).

Nevertheless, in 1967, after the New York Court of Appeals had adopted the interest analysis approach for tort cases in *Babcock*, the Court of Appeals decided the case of *James v. Powell*, and held that the property law rule of *lex situs*—where property is governed exclusively by the law of the jurisdiction where the property is located—rather than the interest analysis approach of *Babcock*, must apply to claims of fraudulent conveyance of real property. 225 N.E.2d 741, 745–46 (N.Y. 1967); *see Comment: Choice of Law in Fraudulent Conveyance*, 67 Colum. L. Rev. 1313, 1313–14 (1967). *James* involved the alleged fraudulent conveyance of real property in Puerto Rico to the detriment of a New York judgment creditor. Because the specific facts and language of that case foreclose most of the parties' arguments in this case, it is worth quoting the Court's reasoning in full:

> The parties have assumed that the substantive law of New York is completely dispositive of the appeal, and the courts below have in fact decided the case under such law. In so doing, they have overlooked the applicable choice of law principle which establishes that the legal consequences of the defendants' acts in this case must be determined under the law of Puerto Rico. The rule is that the validity of a conveyance of a property interest is governed by the law of the place where the property is located. . . .

2

Whatever right the plaintiff had to levy execution on the land in question necessarily arose solely under the law of Puerto Rico, the jurisdiction empowered to deal with the Res. Manifestly, if Puerto Rico regarded the property, when it was owned by the defendants, as not being subject to execution or attachment, the plaintiff could not be heard to complain about the conveyance, regardless of the defendant's motives. The plaintiff would likewise have no cause for complaint if, under the law of Puerto Rico, the land was subject to execution by her prior to the conveyance to the [third-party] Diagos and remained subject thereto even after such transfer.

Assuming that the plaintiff did initially have a right to proceed against the land and that, by reason of the conveyance, her right was frustrated, impaired or made more costly to enforce, her remedy, if any, must arise under the law of Puerto Rico. Such remedy is a concomitant of the right itself; it simply represents an alternate means for satisfying a judgment when the judgment creditor has been blocked or checked in his efforts to reach the land. We should, as a general rule, afford the plaintiff no greater or lesser remedy than she is given under the law creating the right which the remedy is designed to safeguard.

To put the matter somewhat differently, the law of New York does not and cannot determine the extent to which property located outside the State is subject to execution by a judgment creditor. Therefore, whether or not the plaintiff was defrauded by the conveyance to the Diagos may not be resolved under our own rules. We do, of course, have an interest in assuring that a New York judgment creditor is not prevented by wrongful acts of his debtor from satisfying the judgment. To the extent that satisfaction must come from execution on the debtor's assets in a foreign jurisdiction, this State may legitimately demand that there be no arbitrary discrimination by that jurisdiction against New York judgment creditors as compared with local judgment creditors. However, assuming that no such discrimination is practiced by Puerto Rico, then, the availability of a remedy to a judgment creditor who has been prevented from levying execution by a transfer of land located in that jurisdiction constitutes a matter of policy which is properly determinable by the law of Puerto Rico rather than that of New York.

In this regard, we note that the Restatement Second of Conflict of Laws provides for the 'validity of a conveyance' of land to be 'determined by the law of the state where the land is.' More specifically, in their Comment to this provision—under the heading 'Conveyance in fraud of third persons'—the authors of the Restatement declare: 'The law of the state where the land is determines whether the conveyance was made in fraud of third persons. This law therefore determines whether a conveyance, valid between the parties to it, is either void or voidable with respect to others because made, for example, in fraud of creditors.' Although considerable has happened in the field of conflict of laws since 1959 when the Comment was written, we believe that it still reflects the best and most pragmatic view of how to deal with a case stemming from an alleged fraudulent conveyance of real property located in a foreign jurisdiction. It would be unrealistic to give the plaintiff a cause of action for fraud against his debtor and others on the basis of their having made a

3

> conveyance of property in Puerto Rico if what they did was perfectly valid under the law of that jurisdiction.
>
> Cautioning against parochialism in selecting the proper choice of law rule, we recently observed that our courts 'should accord (to foreign law) the recognition which comity between enlightened governments requires.' The present case is a most appropriate one for application of that sound jurisprudential principle.

*James*, 225 N.E.2d at 745–46 (internal citations omitted).

*James* was almost immediately criticized for applying the property law rule of *lex situs*, rather than the interest analysis of *Babcock*, to a claim of fraudulent conveyance, which is effectively a conduct-regulating tort. *Comment: Choice of Law in Fraudulent Conveyance*, 67 Colum. L. Rev. 1313, 1313–14 (1967). Nevertheless, *James* has never been overruled, and continues to govern claims of fraudulent conveyance of real property. In 2001, the Second Circuit, reviewing New York Court of Appeals cases, noted that, "when an action involves real estate but does not challenge the title to, or succession or conveyance of, property . . . the situs of the property is not dispositive of our choice-of-law analysis," but that, "when the validity of a conveyance itself is in question," "the law of the place where the land is situated" still governs, citing *James*. *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 395 (2d Cir. 2001).

Notwithstanding these clear precedents, both parties argue that the interest analysis approach should apply to Plaintiff's proposed claim of fraudulent conveyance of real property. (Plaintiff's Supplemental Brief in Support of Her Motion to Amend ("Pl. Br."), Dkt. 68-7, at 2–4; Defendant Rustico Aala's Memorandum of Law in Opposition to Plaintiff's Briefing on the Application of New York or Philippines Law ("Def. Br."), Dkt. 72, at 2–4.) Plaintiff, in particular, notes that fraudulent conveyance is a tort, that New York law generally applies the interest analysis to torts, and that, more specifically, fraudulent conveyance is a conduct-regulating tort, so, under New York's interest analysis, the law of the place where the tort occurred—which Plaintiff alleges is New York—generally applies. (Pl. Br., Dkt. 68-7, at 3–5.) Plaintiff also notes that fraudulent

4

conveyance is a fraud and, under New York law, the tort of fraud—including fraudulent conveyance—is also governed by the interest analysis framework, citing cases that give particular weight to the place "where the injury was inflicted" or "the location of defendant's conduct"—both of which Plaintiff alleges were New York. (*Id.* at 4–5.)  All of that is true, but it ignores *James*'s creation of an exception for fraudulent conveyance of real property, which has not been overruled.  While Plaintiff argues that *James* "is no longer good law" because "[m]odern cases" observe that fraudulent conveyance is a conduct-regulating tort, governed by the interest analysis approach, and thus the law of the jurisdiction where the tort occurred should apply, none of the cases that Plaintiff cites for that proposition deal with fraudulent conveyances of real property and, more importantly, none of those cases—one New York Appellate Division case, one S.D.N.Y. case, and one S.D.N.Y. Bankruptcy case—can overrule *James*. (*Id.* at 2–3.)

For his part, Defendant argues that the choice-of-law holding in *James* has been legislatively overruled. (Def. Br., Dkt. 72, at 5.)  In its January 3, 2022 Memorandum & Order, this Court acknowledged that *James* was subjected to a partial legislative override by the 2020 amendments to the New York Debtor and Creditor Law ("NYDCL"), which changed some of the substantive provisions of the NYDCL, and also added a choice-of-law provision, whereby certain fraudulent conveyance claims are governed by the jurisdiction where the debtor was located at the time the transfer was made.  (Memorandum & Order ("M&O"), Dkt. 61, at 11–14.)  The Court also observed, however, that, because the alleged fraudulent conveyance occurred before April 4, 2020, only the pre-2020 version of the NYDCL could apply to Plaintiff's claim.  (*Id.* at 11 (citing *Ray v. Ray*, 799 F. App'x 29, 31 n.1 (2d Cir. 2020) (summary order)).)  Defendant, nevertheless, argues that the 2020 amendments should be "considered piecemeal." (Def. Br., Dkt. 72, at 5.)  Defendant notes that the 2020 amendments to the substantive portions of the NYDCL changed

prior legislative enactments, but that the pre-2020 NYDCL did not have a choice-of-law provision, so the 2020 amendment adding one did not amend a prior legislative enactment, and instead overruled the prior common law choice of law scheme as it applied to NYDCL claims, which, in the case of fraudulent conveyances of real property, was *James*. (*Id.*)  Seizing on that distinction, Defendant argues that courts should apply the substantive amendments only to conveyances that occurred after April 4, 2020, but should apply the choice-of-law provision to all claims that have not yet been adjudicated.  (*Id.*)  The Court need not take a position on the wisdom of that logic, because the argument is foreclosed by the 2020 amendments themselves.  The choice-of-law provision was added to the NYDCL in the same act that made all of the substantive changes to the NYDCL.  Section 7 of that act, which was approved on December 6, 2019, states that "[t]his act shall take effect one hundred twenty days after it shall have become a law, and shall apply to a transfer made or obligation incurred *on or after such effective date, but shall not apply to a transfer made or obligation incurred before such effective date*, nor shall it apply to a right of action that has accrued before such effective date." 2019 N.Y. Sess. Laws Ch. 580, § 7 (emphasis added); *Ray*, 799 F. App'x at 31 n.1.  For this Court to find that—despite the clear and unequivocal language of § 7—one section of the act does, in fact, apply to transfers made before the act's effective date, would impermissibly and baselessly torture the language of the text.

Defendant also argues that *James* is "not necessarily . . . instructive on the question of choice of law" in this case because *James* involved a post-judgment fraudulent conveyance, while this case involves a pre-judgment fraudulent conveyance. (Def. Br., Dkt. 72, at 5–6.)  New York law, however, draws no such distinction. Under New York law, an assault and battery victim—as Plaintiff is alleged to be—becomes a "creditor" at the moment the assault and battery occurs, and if a subsequent conveyance was made in fraud of that creditor, the creditor has the same right to

6

bring a fraudulent conveyance claim as someone who had already obtained a judgment when the alleged fraudulent conveyance occurred. (M&O, Dkt. 61, at 13); *Shelly v. Doe*, 671 N.Y.S.2d 803, 805 (App. Div. 1998). The same may not be true, of course, under the law of the Philippines, which speaks directly to the central holding of *James*—that whether the conveyance of real property was valid must be determined by the law where the property is located. *James*, 225 N.E.2d at 745–46 ("It would be unrealistic to give the plaintiff a cause of action for fraud against his debtor and others on the basis of their having made a conveyance of property in Puerto Rico if what they did was perfectly valid under the law of that jurisdiction."). Accordingly, Defendant's attempt to draw a distinction between this case and *James* only emphasizes the point that, under *James*, the law of the *situs* must apply.

Defendant also argues that New York law should apply because the parties consent to having New York law apply. (Def. Br., Dkt. 72, at 2–3.) In its January 3, 2022 Memorandum & Order, this Court observed that, under a New York choice-of-law principle that is separate from the interest analysis or *lex situs*, implicit or explicit consent to New York law is sufficient to establish choice of law, unless "a strong countervailing public policy" dictates otherwise. (M&O, Dkt. 61, at 17.) This Court also noted, however, that the facts and language of *James* demonstrate that just such a "strong countervailing public policy" is at issue when determining the validity of a transfer of real property located in another jurisdiction. (*Id.* at 17.) The New York choice-of-law principle that implicit consent to New York law is generally sufficient to establish choice of law was established well before *James*,[1] and the parties in *James* implicitly consented to New

---

[1] (M&O, Dkt. 61, at 17–18); *Martin v. City of Cohoes*, 332 N.E.2d 867, 869 (N.Y. 1975) (collecting cases, including New York Court of Appeals cases dating back to 1885, for the proposition that "parties to a civil litigation, in the absence of a strong countervailing public policy, may consent, formally or by their conduct, to the law to be applied.").

York law. *James*, 225 N.E.2d at 745. Still, the Court of Appeals found, in unequivocal terms, that the law of the *situs* must apply. *Id.* ("[T]he law of New York does not and cannot determine the extent to which property located outside the State is subject to execution by a judgment creditor."). The Court of Appeals also explicitly noted the public policy at play: "[T]he availability of a remedy to a judgment creditor who has been prevented from levying execution by a transfer of land located in that jurisdiction constitutes *a matter of policy* which is properly determinable by the law of Puerto Rico rather than that of New York." *Id.* (emphasis added). In this case, the Court gave the parties an opportunity to further explore the intersection between New York's consent rule and the *lex situs* rule of *James*, but the parties have made no argument that convinces the Court that their consent to New York law may overcome *James*.

Defendant further argues that the differences between fraudulent conveyance claims under New York and Philippines law are not so significant that the Court needs to apply the law of the Philippines. (Def. Br., Dkt. 72, at 6–8.) Under New York choice-of-law rules, if no "actual conflict" exists between the law of New York and the law of another jurisdiction on the issue presented, a court may simply apply New York law. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012). An "actual conflict" exists where "the applicable law from each jurisdiction provides different substantive rules" that are "relevant to the issues at hand" and the difference may have "a significant *possible* effect on the outcome of the trial." *Lehman Bros. Special Fin.*, 414 F.3d at 331 (internal quotation marks omitted). The difference need not be outcome determinative. *Id.*

Defendant concedes that the Philippine's fraudulent conveyance law, as opposed to New York's, requires a different *mens rea* and allows for greater damages. (Def. Br., Dkt. 72, at 7.) Nevertheless, Defendant argues that "there is no need for this Court to consider a fraudulent

8

conveyance under [Philippines] law." (*Id.* at 8.)  Defendant cites no case for the proposition that a different *mens rea* requirement and amount of recoverable damages are not "actual conflicts." To the contrary, those difference could easily have a significant effect on the outcome of trial.  *See, e.g.*, *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 511 (S.D.N.Y. 2014) (holding that differences in standards of fault and damages are "actual conflicts").  Defendant's argument that simply because both the Philippines and New York have a cause of action for fraudulent conveyance, a choice-of-law analysis is not required, is unavailing.

   Finally, Defendant argues that the Civil Code of the Philippines states that, "Real property as well as personal property is subject to the law of the country where it is stipulated," and that, because the parties here agree that New York law should apply, the Court can apply New York law. (Def. Br., Dkt. 72, at 8.)  This argument is based on a typographical error.  Some databases of Philippines law contain a version of the Civil Code of the Philippines where Article 16 reads, "Real property as well as personal property is subject to the law of the country where it is *stipulated*."  *See, e.g.*, LawPhil Project, *Republic Act No. 386*, https://www.lawphil.net/statutes/repacts/ra1949/ra_386_1949.html (last visited May 18, 2022) (emphasis added).  Others, however, contain a version where Article 16 reads, "Real property as well as personal property is subject to the law of the country where it is *situated*."  *See, e.g.*, Republic Act, *Civil Code of the Philippines*, http://republicact.com/docs/statute/2/ra-386-civil-code-philippines (last visited May 18, 2022) (emphasis added).  The difference is obviously critical in this case.  The first version would be consistent with the New York choice of law principle that the parties may consent to New York law, and would support Defendant's argument.  The second version would be consistent with *James*'s holding that the law of the *situs* must apply, and would flatly contradict Defendant's argument.

9

The conflict appears to originate from the Philippine's official website for its own laws, the *Official Gazette*. On the *Official Gazette*'s website, Article 16 of the Civil Code of the Philippines reads, "Real property as well as personal property is subject to the law of the country where it is *situated*." Official Gazette, *Republic Act No. 386* (June 18, 1949), https://www.officialgazette.gov.ph/1949/06/18/republic-act-no-386 (emphasis added). A PDF[2] of Article 16 linked to on the website, however, reads, "Real property as well as personal property is subject to the law of the country where it is *stipulated*." *Official Gazette*, Republic Act No. 386, https://www.officialgazette.gov.ph/downloads/1949/06jun/19490618-RA-0386-JPL.pdf (last visited May 18, 2022) (emphasis added). For several reasons, the Court finds that the website is the more reliable source and contains the correct translation of Article 16. First, the PDF available on the *Official Gazette* has been run through Optical Character Recognition ("OCR"), which is commonly known to occasionally, erroneously modify characters. *See, e.g.*, Adobe Blog, https://blog.adobe.com/en/publish/2016/03/08/correcting-ocr-errors (last visited May 18, 2022) ("OCR is an imperfect process. While some very good originals will process at or near 100% accuracy, if you feed Acrobat a poor quality document, results will suffer."). Second, some of the databases that contain the version of Article 16 with the word "stipulated" nevertheless contain decisions from the Supreme Court of the Philippines that quote Article 16 as using the word "situated." *See, e.g.*, LawPhil Project, *G.R. No. L-16749*, https://lawphil.net/judjuris/juri1963/jan1963/gr_l-16749_1963.html (last visited May 18, 2022). Third, and perhaps most convincingly, all of the secondary sources that the Court has found discussing the topic, state that Article 16 of the Civil

---

[2] "PDF," which stands for Portable Document Format, is a "file format technology developed by Adobe Systems to facilitate the exchange of documents between platforms regardless of originating application by preserving the format and content." *Balance Point Divorce Funding, LLC v. Scrantom*, 305 F.R.D. 67, 74 (S.D.N.Y. 2015) (internal quotation marks omitted).

10

Code of the Philippines is effectively a restatement of the property law rule of *lex situs*. *See, e.g.*, *Conflict of Laws and Territorial Application—Creation of Interest*, 2 International Secured Transactions § 24:35. Because Article 16 of the Civil Code of the Philippines states that real property is governed by the law of the *situs*, the concerns expressed in *James* are particularly pertinent—that is, the Court should apply the law of the Philippines here because "the law of New York does not and cannot determine the extent to which property located [in the Philippines] is subject to execution by a judgment creditor." *James*, 225 N.E.2d at 745–46.[3]

For all of the reasons explained above, the Court concludes that the law of the Philippines applies to Plaintiff's proposed fraudulent conveyance claim with respect to Defendant's property in the Philippines.

In conjunction with the present motion, despite the choice-of-law issue not yet being resolved, Plaintiff submitted a proposed "Third Amended Complaint" that attempted to state a

---

[3] Although the parties do not raise the issue, the Court notes again that *James* was about a common law claim of fraudulent conveyance, rather than a claim brought under the NYDCL, and that a purpose of the NYDCL was to "enable creditors to know with certainty that they could rely upon the property of their debtors, even if situated in another jurisdiction." (*See* M&O, Dkt. 61, at 15.) That raises a concern that applying the law of the *situs* of real property may be in conflict with a purpose of the NYDCL. *James*, however, directly addressed that concern, noting that because courts "have an interest in assuring that a New York judgment creditor is not prevented by wrongful acts of his debtor from satisfying the judgment,"

> [t]o the extent that satisfaction must come from execution on the debtor's assets in a foreign jurisdiction, this State may legitimately demand that there be no arbitrary discrimination by that jurisdiction against New York judgment creditors as compared with local judgment creditors. However, assuming that no such discrimination is practiced by [the foreign jurisdiction], then, the availability of a remedy to a judgment creditor who has been prevented from levying execution by a transfer of land located in that jurisdiction constitutes a matter of policy which is properly determinable by the law of [the foreign jurisdiction] rather than that of New York.

*James*, 225 N.E.2d at 745–46.

11

claim for fraudulent conveyance under the pre-2020 NYDCL, the choice of law for which Plaintiff was advocating. (*See* Dkt. 68-3.) Given the Court's ruling on the choice-of-law issue, that proposed amended complaint is obsolete. Rather than require Plaintiff to file another proposed complaint, and allow Defendant to argue that the proposed complaint is futile, the parties shall proceed as follows. If Plaintiff believes that she can, in good faith, plead facts that would state a claim for fraudulent conveyance under the law of the Philippines, she is granted leave to file a First Amendment Complaint[4] on or before June 21, 2022. At that time, if Defendant believes that Plaintiff has not stated a claim of fraudulent conveyance under the law of the Philippines, Defendant may move to dismiss.

## CONCLUSION

For the reasons explained above, the Court holds that the law of the Philippines applies to Plaintiff's proposed claim of fraudulent conveyance. If Plaintiff believes that she can, in good faith, plead facts that would state a claim for fraudulent conveyance under Philippines law, she is granted leave to file a First Amendment Complaint on or before June 21, 2022. At that time, if Defendant believes that Plaintiff has not stated a claim of fraudulent conveyance under Philippines law, Defendant may move to dismiss consistent with the Federal Rules of Civil Procedure and this Court's Individual Practices and Rules.

---

[4] The proposed "Third Amended Complaint" submitted by Plaintiff, had it been filed, would have actually been a First Amended Complaint. There has only been one operative complaint in this case. The other proposed complaints that Plaintiff submitted in this case were rejected by the Court and are thus nullities. The Court further notes that the proposed "Third Amended Complaint" contained a section titled "The 11/20/09 Contract" that consisted of the single word "When." Plaintiff's counsel is reminded to thoroughly proofread all pleadings before filing them with the Court.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 18, 2022
      Brooklyn, New York